UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07CV-198-H

MARY OBERHAUSEN, *et al.*                                        PLAINTIFFS

v.

LOUISVILLE-JEFFERSON COUNTY METRO                               DEFENDANTS
GOVERNMENT, *et. al.*

### MEMORANDUM OPINION

One of life's most trivial annoyances–the parking ticket–and one of our most

fundamental constitutional protections–due process, form the unlikely nexus for Plaintiffs'

challenge to Metro Government's enforcement of state and local parking regulations.  The Court

has devoted considerable effort considering these two at once without either inflating the

significance of the former or trivializing the latter.

Plaintiffs focus their arguments on how Defendants' enforcement policies have violated

the Due Process Clause of the Fourteenth Amendment, though they also allege violations of the

Takings Clause of the Fifth Amendment, and the unreasonable seizures provisions of the Fourth

Amendment of the United States Constitution as well as numerous state laws.  Defendants have

moved to dismiss Plaintiffs' federal constitutional claims.  The Court has considered the many

issues raised and has discussed them with counsel.  There seems little doubt that Defendants'

procedures have failed to follow both state statutes and local ordinances in some respects.  These

transgressions, however, do not compel a federal remedy.  For the reasons discussed below, the

Court will dismiss the federal constitutional claims and remand the remaining claims to state court.

## I.

It is important to set the context for the Court's consideration.  To address the issues raised, the Court must understand (1) the identity of potential Plaintiffs, (2) the statutes, ordinances and practices which govern Defendants' actions and (3) the precise legal allegations that Plaintiffs raise.  The Court must accept Plaintiffs' factual allegations as true.  The precise nature of these factual and legal claims is important because Plaintiffs make a challenge to the ticketing policies as they are actually applied.

## A.

Plaintiffs are eleven individuals who parked vehicles which they owned on streets in Louisville and have been cited for parking in violation of the parking ordinances.   (Pl.'s Second Am. Compl. ¶ 4).  They state that parking tickets were placed on their vehicles.  (*Id*. ¶ 16). Some paid their parking fines in response to the late penalty forgiveness offered by the "amnesty period" or at another time. (*Id.* at ¶ 23).   Other Plaintiffs have neither contested nor paid their parking citations.  They claim to "remain under the threat of having their vehicle immobilized by having a 'boot' attached thereto in the event they park on a street and/or roadway within Louisville."  (*Id.* at ¶ 26). One named Plaintiff claims that her vehicle was booted and subsequently impounded at the time her vehicle was issued its sixth parking citation.  This same Plaintiff claims not to have received notice of the prior five prior citations because another

member of her family was using her car and did not tell Plaintiff about the tickets.[1]

Defendants are Louisville Metro (a consolidated local government),  Jerry Abramson (the mayor of Louisville Metro), Rebecca Jackson (the former county-judge executive of Jefferson County), Robert White (Chief of Police of Louisville Metro), and Cathy Duncan, (Executive Administrator of Parking Authority of River City (PARC)) (collectively "Defendants" or "Metro Government").  Metro Government is responsible for enforcing parking violations in accordance with state laws and local ordinances.  It has adopted policies and procedures to do so.

Plaintiffs propose to bring a class action on behalf of two groups of individuals.  The first class seeks monetary damages and would consist of:

> those persons who were threatened and/or coerced into involuntarily paying parking ticket fines and/or other assessments to the Defendants during the period of time wherein the Defendants failed and/or refused to comply with the Parking Enforcement Statutes and Louisville Metro's own Parking Citation Enforcement Ordinances . . . (*Id.* at ¶ 27a).

The second class seeks temporary and permanent injunctive and declaratory relief and would consist of "any person adversely affected by the Defendants' failure and/or refusal and continued failure and/or refusal to comply with the Parking Enforcement Statues and the parking Citation Enforcement Ordinances." (*Id.* at ¶ 27b).

---

[1]The Court notes that in their Response to Defendants' Amended Motion for Summary Judgment, Plaintiffs claim, "it is also reasonable to assume, given Defendants' public statements, that vehicles parked in *legal* spots were also seized."  Even on a 12(b)(6) motion, however, Plaintiffs bear the burden of establishing standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Here, they must allege a set of facts that, if proven, could support their claim of standing.  *Id.* (finding that the "manner and degree" of evidence required to establish standing tracks the "successive stages of litigation.").  No such facts are presently before the Court. Without evidence that even one of the named Plaintiffs contends that he or she was parked legally at the time her car was immobilized and/or impounded, the Court will not address what appears to be a "conjectural" or "hypothetical" case of a legally parked vehicle.

3

B.

Since 1984, the "Local Government Parking Enforcement Act" has permitted local governments to enact parking ordinances and impose penalties for civil violations. Ky. Rev. Stat. Ann. § 82.640. Metro Government, in turn, enacted local parking ordinances and delegated PARC to administer and enforce them. These local ordinances are codified at §§ 72.120-134 of Louisville Metro Parking Ordinances. Under these ordinances, when a person violates a parking ordinance, Defendants place a parking citation on the vehicle windshield.[2] Each citation specifies a seven-day time period within which the violator can either pay or contest the citation without incurring additional penalties.[3]

More specifically, each parking ticket contains the following statement printed on its back:

> This notice represents a determination that a parking violation has been committed by the owner of this vehicle and the determination is final unless contested within seven (7) calendar days of issuance. Fines may be paid by mailing if paid within seven (7) calendar days of issuance. DO NOT MAIL CASH. If paid within seven (7) calendar days of issuance, you may pay the discounted fine. Failure to pay may result in impoundment and/or immobilization of this vehicle, resulting in additional fees, including towing, handling, and storage.
>
> Fines may also be paid:

---

[2] Henceforth, when the Court uses a variation of the term "violation" or "violators," the reader should know that, in instances, these are allegations which may be denied and challenged. During a conference regarding the pending motions, all present seemed to acknowledge the obvious: that in all but a small fraction of instances, ticketed automobiles were in violation of parking regulations. In some rare instances, malfunctioning parking meters, mistake or misfeasance could result in an improper ticket.

[3] Ky. Rev. Stat. Ann. § 82.610(3) states that a notice of a parking violation represents a determination that a parking violation has been committed, and such a determination shall be final unless the violator contests as provided in Ky. Rev. Stat. Ann. § 82.600 to § 82.64. Thus, the citation represents evidence of and, absent an appeal, a determination of liability.

4

> In person 8 am - 5 pm at the Parking Office,
> 224 W. Muhammad Ali Blvd.
> By telephone - (502) 569-6222
>
> Citations may be contested by appeal within seven (7) calendar days of issuance.  To appeal this citation, get an appeal form online, or at the address indicated above, or call (502) 569-6222 to have a form sent to you.
>
> Make checks payable to: PARC
> YOU MUST RESPOND WITHIN 7 DAYS

Under the state statutes and local ordinances, the parking citation is the violator's first notice of the parking violation and his right to appeal.

The state statute provides for a second notice:

> [i]f the owner of a vehicle cited for a parking violation has not responded to the notice within seven (7) days as provided in subsection (1) of this section, the local government shall send a second notice by certified mail to the last known address of the registered owner of the vehicle as listed on the certificate of title.  Such notice shall state that if the owner of the vehicle does not respond to the notice by either paying the fine or by requesting in writing a hearing pursuant to KRS 82.620, within seven (7) days of the receipt of the notice, the owner shall be deemed to have waived his right to a hearing and the determination that a violation was committed shall be considered final . . . Ky. Rev. Stat. Ann. § 82.615(2).

Accordingly, Metro Government enacted local parking ordinance LMO § 72.125(B) which requires a second mailed notice containing the information described in Ky. Rev. Stat. Ann. § 82.615(2).  However, instead of requiring the notice to be sent by certified mail, § 72.125(B) states that "Metro Government shall send a second notice by U.S. mail."  Thus under both the statute and Metro ordinance, a violator would have at least two weeks to contest a ticket (seven days from the date of the ticket until the second notice is mailed plus seven days from the receipt of the second notice).  Under state law, the registered owner of the vehicle, regardless of the

5

other circumstances, is liable for the fines and penalties.  Ky. Rev. Stat. Ann. § 82.610.

In February 2007, Metro Government announced an "amnesty period" for individuals with outstanding parking tickets.  During the amnesty period, parking violators could pay their parking tickets and avoid all late fees and penalties.  A few months later, Metro Government "upped the ante," announcing that they would immobilize or "boot" any illegally parked vehicle also found to have accumulated three (3) or more unpaid parking tickets.  According to Plaintiffs, Metro Government booted approximately eighty vehicles before agreeing to stop the practice pending the outcome of this lawsuit.  One Plaintiff says that she was unaware of tickets accumulated by family members and was surprised to find her vehicle booted and later impounded.  Others claim to have paid their three or more outstanding tickets to avoid having their vehicle booted.

## C.

Plaintiffs allege that Defendants violated the Kentucky statutes governing parking violation notices by: (1) failing to send any second notice by *certified* mail, as the state statute requires; (2) sending a second notice which fails to provide any information regarding the right to contest the citation as the state statute and local ordinances require[4] (Ky. Rev. Stat. Ann.

---

[4] In response to this allegation, Defendants have submitted a copy of the follow-up mailing they claim to send to violators who do not pay their parking tickets (Exh. B).  The notice states, in part:

> Re: Past Due Parking Citation(s) on License Plate #[xxxxxx]
> The owner of the vehicle with the license number noted above has the following outstanding parking citations:
>
> [List of citation number, Issue Date, Violation, Street, Amount]
>
> Fines may have already increased for non-payment.  Failure to pay all outstanding citations in full can result in immobilization and/or towing of your vehicle.  You can pay by any method below . . . If payment has been made or the vehicle was not registered to you at the time of the violation, please contact us so we can update our records. . .

6

§86.615; LMO §72.125-26); and (3) providing notice of the citation and right to contest *only* through the initial ticket. Plaintiffs also contend that the violation notice fails to adequately inform them of their rights or about the possibility that their vehicle could be immobilized and impounded.[5]

Plaintiffs do not frame their complaint as a facial challenge to the constitutionality of Kentucky's statutory scheme.[6]  Rather, they argue strenuously that by failing to follow the statutory notice provisions, Defendants ignore Plaintiffs' due process rights and take their property.  Plaintiffs allege deprivation of three property interests without due process - "monies, motor vehicles, and appurtenant service of process and appeal rights." (Pl.'s Mem. in Op. to Defs.' Supplemental Am. Mot. to Dismiss 20).

The original parking citation violates due process, Plaintiffs say, because this is not a reasonably calculated method to notify a violator either of his rights or the potential consequences of his failure to respond.  The defective notice, Plaintiffs argue, infects every aspect of Defendants' subsequent actions, including the collection of parking fines and the impounding of vehicles.  Finally, Plaintiffs argue that state law does not authorize Defendants to immobilize or impound vehicles solely due to accumulated unpaid parking citations.

---

The Court agrees with Plaintiffs that the mailing does not contain the information described in § 82.615(2) or LMO § 72.125(B), including information about how to contest the ticket.

[5]As noted above, the parking ticket indicates that the violator has seven days from receipt of the ticket to appeal.  By contrast, under Ky. Rev. Stat. Ann. § 82.615(2), a violator has an additional seven day period to appeal which runs from the date the violator receives the mailed second notice described in that statutory provision.

[6]It is unclear from Plaintiffs' pleadings whether they believe that strict compliance with LMO § 72.125 (second notice by U.S., instead of certified mail) would satisfy due process.  Although they ask this Court to declare that LMO § 72.125 is unconstitutional, elsewhere in their pleadings they assert that the notice infirmity arises from the practice of windshield notice only.

II.

The Court now turns its attention to the substantive constitutional issues.[7]  In this section, the Court will consider the deprivation of the property interest in their vehicles.  However, the issues concerning each property interest are interrelated.

At least one Plaintiff's vehicle has been immobilized and others with outstanding parking tickets claim to fear imminent booting.  There is no doubt that vehicle immobilization and impoundment constitute deprivation of a *constitutionally* protected property interest.  *See, e.g. Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir. 1991); *Gross v. Carter*, 265 F.Supp.2d 955, 1001 (W.D. Ark. 2003).  Moreover, as a mechanism to induce payment of outstanding parking citations, it constitutes a form of pre-judgment attachment. *Id.*  "[E]ven temporary or patrial impairments to property rights that attachments . . .and similar encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991).

Where this occurs, the Court must decide "whether the procedures that accompanied the interference were constitutionally sufficient." *Herrada*, 275 F.3d at 556.  At its core, due process entails, notice - a meaningful opportunity to be heard, and a fair and impartial process. *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)(citing *Cleveland Bd. of Ed. v. Loudermill*, 470

---

[7]Plaintiffs' Second Amended Class Action Complaint purports to bring federal claims under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as well as 42 U.S.C. § 1983.  The Sixth Circuit has held that constitutional violations by non-federal officials for damages are cognizable only under 42 U.S.C. § 1983, the enabling statute that provides exclusive remedy for constitutional violations.  See *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987), *vacated and remanded on other grounds*, 488 U.S. 1036 (1989).  Moreover, to the extent that Plaintiffs have pled § 1983 as an additional count to their constitutional claims,  the Court observes that § 1983 is an enabling statute for individuals to redress constitutional violations. Therefore, the Court will consider the merits of Plaintiffs' constitutional claims as if they had been pled under §1983.

U.S. 532, 542 (1985)).  "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)(citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  To get to the bottom of these issues requires a multi-step analysis: different due process concerns apply at each stage.

A.

Plaintiffs' primary challenge is that the procedures used to inform citizens of their violation, appeal rights, and the possibility that a vehicle may be immobilized, fall far short of due process.  On two recent occasions, the Supreme Court has concluded that *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306 (1950), "supplies the appropriate analytical framework . . .when confronted with questions regarding the adequacy of the method used to give notice." *Dusenbery v. U.S.*, 534 U.S. 161, 167-68 (2002); *Jones v. Flowers*, 547 U.S. 220 (2006)(applying *Mullane* in a due process challenge to notice provided in connection with a tax sale of property).  Under *Mullane*, a court asks whether "notice [is] reasonably calculated under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 313; *Jones*, 547 U.S. at 226; *Dusenbery*, 534 U.S. at 169.  This Court must decide first whether a single windshield notice specifying a seven-day period to contest a parking violation meets these concerns.[8]

The parking ticket itself has the virtue of brevity and simplicity.  On one side it explains the violation and the fine.  On the other side, a brief paragraph explains about how to file an appeal, and provides three avenues–an address, telephone number, and web site–to obtain more

---

[8]It is important to note that Plaintiffs *do not* claim to challenge the seven-day period stated on the ticket as being too brief of an opportunity to contest the violation.  Rather, they argue that because seven days is less than the time for appeal described in the statute and local ordinance, the ticket misleads the violator into believing his period for appeal is only seven days.

9

information.  It also plainly states, "Failure to pay may result in impoundment and/or immobilization of this vehicle, resulting in additional fees, including towing, handling, and storage."  Plaintiffs have argued that the tickets fails to provide adequate notice because the information is printed in relatively small lettering and appears on the back of the ticket.  This is not a tenable argument.  The information is plenty clear for most anyone who bothers to read it. It is not too much to expect even a temporarily disgusted parking violation recipient to examine both sides of a citation.  The notice one finds there is clear, brief, legible and reasonable.

The Court is also satisfied that affixing parking tickets to vehicle windshields is reasonably certain to provide an owner notice of the violation.  *See, e.g. Rector v. City and County of Denver*, 348 F.3d 935, 948 (10th Cir. 2003)[9]; *Gross v. Carter*, 265 F.Supp. 2d 995, 1001-02 (W.D. Ark. 2003); *Patterson v. Cronin*, 650 P.2d 531, 535 (Colo. 1982).  To do so is certainly the most direct method.[10]  True, some few parking tickets may not reach the vehicle's registered owner.  The most cited reason is that an embarrassed or merely non-communicative family member and vehicle user may prevent actual notice.  Of course, wind, rain or even unknown third persons could destroy a notice.  But no one suggests that any of these forces are rampant.  Actual failures of notice are rare.  Regardless, the question is not whether the method will be 100% effective, but rather whether it is "reasonably calculated."  *Mullane*, 339 U.S. at 315; *Jones,* 547 U.S. 220 at 226 (stating "due process does not require that a property owner receive actual notice before the government may take his property.").  Here, no doubt, it is.

---

[9]Though the parking enforcement ordinances at issue in *Rector* did provide for mailed follow up notices, the court, in analyzing only the adequacy of the parking ticket found, "because Denver's tickets clearly notified recipients of the nature of the action and amount in contest, the demands of constitutional due process were satisfied." *Id.* at 948.

[10]It does, in fact, accomplish notice in most cases and windshield notice is "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315.

Everyone acknowledges that for the reasons mentioned above a parking violation notice sometimes fails to reach the registered vehicle owner.[11]  On even rarer occasions, a vehicle is impounded without prior notice of a violation.  In such instances, the vehicle owner can always assert the defense of lack of actual notice.  One does this in the same way that a person against whom a default judgment has been entered moves to set aside a judgment for lack of actual notice.[12]  In such circumstances, one must show good cause for not responding prior to the entry of actual "judgment" – which, in this case occurs if the violator does not respond to his ticket in seven days.  *See Sunrise Turquoise, Inc. v. Chemical Design Co.,* 899 S.W.2d 856 (Ky. App. 1995).  Thus, a "determination" that a parking violation occurred does not become final until the violator receives actual notice of the determination and has had an opportunity to present his defenses.

Plaintiffs argue that due process requires mailed notice similar to that which the state statute requires.[13]  State legislatures, however, do not define the precise parameters of federal due process.  *See, e.g. Rector,* 348 F.3d 935, 947 (10th Cir. 2003)("[A] state's violation of its own laws does not create a claim under §1983 . . . [the] alleged failure to follow its own ordinances is actionable only if the City's actions fail to meet basic federal constitutional

_____

[11] The registered vehicle owner is liable for all parking violations under state law.  Ky. Rev. Stat. Ann. § 82.610.

[12] Under Kentucky law, for instance, a default judgment can be set aside for good cause.  This requires a showing of valid excuse for the default (including lack of notice); a meritorious defense to the claim; and absence of prejudice to the non-defaulting party.  *Sunrise Turquoise, Inc. v. Chemical Design Co., Inc.*, 899 S.W.2d 856 (Ky. App. 1995).

[13] They direct the Court's attention to *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983).  But that case concerned the sale of real property without notice to the mortgagee who held the property to secure an obligation of $14,000.  *Id.* at 794.  By contrast, the most severe property deprivation that could occur here is for that temporary period necessary to effect the separate post-deprivation procedures, including a hearing within 72 hours in some cases. LMO §72.129(A).

11

standards.").   Constitutional due process notice requirements "vary with circumstances and conditions."  *Jones*, 547 U.S. at 227 (quoting *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)).  An additional mailing step may well provide better notice and the legislature may require it.  However, the relatively minor property interest involved, the small chance of erroneous deprivation, and the relatively slight value of additional or substitute procedural safeguards, means that Fourteenth Amendment due process does not require it.  "The failure of notice in a specific case does not establish the inadequacy of the attempted notice."  *Cf. Jones v. Flowers*, 547 U.S. at 231.  Moreover, it seems fair for Defendants to "assume an owner leaves his property in the hands of one who will inform him if his interest is in jeopardy." *Cf. id.* (citing *Mullane*, 339 U.S. at 316).

Accordingly, the Court finds that Metro Government's parking citations provide sufficient notice of the potential penalties as well as the available appeals process.  *See, e.g. Gross*, 265 F.Supp. 2d 995 (finding that "the practice of affixing parking tickets to illegally parked vehicles is reasonably certain to provide notice of the parking violation.")

B.

The due process context is changed where the state does more than simply impose a parking citation.  At least one Plaintiff complains that her vehicle was booted and then impounded without any prior notice or opportunity to avoid it.  This question raises another: what process must our government provide before and after taking a citizen's vehicle.  The Court will consider the pre-deprivation requirements first.

The Sixth Circuit relies on the *Mathews* test to determine what process is due.  Under *Mathews*, courts balance "[1] the private interest that will be affected by the official action . . .

[2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and . . .[4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Sickles v. Campbell County, Ky.,* 501 F.3d 726, 729 (6th Cir. 2007)(quoting *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976)).  "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." *Mathews*, 424 U.S. at 348.  Here, all four factors suggest that neither immobilization nor impoundment need wait upon an additional hearing.

As to the first factor, Plaintiff here lost the immediate use of her vehicle.  To be sure, this is a shocking and infuriating experience for anyone who must endure it.  However, a citizen incurs this risk only after accumulating three or more unpaid citations and then parking illegally again.  Moreover, no criminal sanctions are possible and the taking is hardly permanent.

The next two factors are related.  An "error" in determining that a vehicle was eligible for towing could occur in three ways.  First, a mistake is possible in the initial determination that the parked vehicle violates parking regulations.  Such an error seems highly unlikely given the objective nature of an expired parking meter or a "no parking" sign.  No one suggests a significant risk of error by those empowered to immobilize vehicles.  *See Grant v. City of Chicago*, 594 F.Supp. 1441, 1447 (D.C. Ill. 1984).  Second, an error is possible in determining that a vehicle has accumulated three unpaid citations.  Again, this risk is small.  Indeed, no one specifically complains of such an error.  Finally, some have complained of being actually unaware that their vehicle had accumulated three unpaid tickets.  As the Court has discussed,

13

however, even a surprise impoundment is not strictly unlawful since a vehicle owner is liable for the tickets of all those using the vehicle, even when they fail to advise the owner.

Implicit in Plaintiff's argument is the belief that those who fail to pay parking violations should not have their vehicles subject to impoundment.  Assuming that Metro Government has the statutory authority to tow and impound violators, the Court will leave to elected officials the decision whether and under what circumstances to exercise that authority.[14]  More to the Court's immediate concern, no Plaintiff has alleged that a pre-deprivation hearing would have shown that their vehicle was not subject to impoundment for failure to pay fines.  Therefore, because it seems to be quite infrequent and capable of correction at a prompt post-deprivation hearing, the probable value of a pre-deprivation hearing is relatively low." *Id.*

The final *Mathews* factor is the government's interest in avoiding an unduly burdensome procedural requirement.  To collect parking fines, Metro Government is entitled to balance a need for efficiency against the likelihood that many will contest the determination that their vehicle has received enough tickets to be immobilized. The enforcement "is impossible if vehicle owners can repeatedly ignore with impunity the sanction imposed for violation of the ordinances." *Id.*  One who ignores the receipt of three parking citations has limited reason to complain.  A separate notice "via certified mail of a pending impoundment" in addition to the notice and opportunity to contest each ticket, would be a costly and duplicative administrative burden.

Other courts considering these issues have agreed that to tow a car without the

---

[14] As part of its discussion of Plaintiffs' Fourth Amendment claim in Section V of this Memorandum, the Court does conclude that Kentucky law authorizes Metro Government to impound vehicles in violation of parking regulations.

14

opportunity for a pre-deprivation hearing, even in non-emergency situations, and for purposes of collecting unpaid parking fines, is permissible in circumstances such as ours.  *See, e.g. Sutton v. City of Milwaukee*, 672 F.2d 644 (7th Cir. 1982); *Grant v. City of Chicago*, 594 F.Supp. 1441 (D.C. Ill. 1984).  Some courts have disagreed under limited circumstances.  *See Wilson v. City of New Orleans,* 479 So.2d 891, 901 (La. 1985).[15]  The *Grant* district court, for instance, concluded that the "burden of notifying and affording a hearing to all those who may have their vehicles booted in the future is magnified in light of the fact that they have all been given notice and a chance to be heard" in the form of their parking tickets.  594 F.Supp. at 1448.  The Supreme Court noted that where a person may pay a sum to recover his impounded vehicle pending a hearing on the legality of the towing, the deprivation is actually just the use of the money between the time of paying the hearing.  On balance, the Court found that the city's interest in enforcing its parking rules justified this temporary deprivation.  *City of Los Angeles v. David*, 538 U.S. 715 (2003).

Based on the Court's analysis of the *Mathews* factors and supported by the persuasive views of other courts, this Court concludes that due process does not require a separate notice and opportunity for a hearing, in addition to that provided by each parking ticket, prior to Metro Government booting and impounding vehicles as described here.[16]

---

[15]Plaintiffs direct the Court to this decision from the Supreme Court of Louisiana which, in 1985, found some form of mailed notification of a proposed boot order and "a brief period for informal discussion or other communication prior to the issuance of the immobilization order" necessary to satisfy due process. *Wilson v. City of New Orleans*, 479 So.2d 891, 901 (La. 1985).  That case concerned a vehicle that was parked legally at the time it was immobilized, which does not appear to be the case before the Court.  *See* Mandujano Aff. ¶5 ("another parking ticket was issued to my vehicle and a 'boot' device was place [sic] on it . . ."). *But see*, *City of Los Angeles v. David*, 538 U.S. 715 (2003)(holding that due process was not violated in a twenty-seven day delay in holding a hearing after an illegally parked vehicle was towed.)

[16]To be sure, the Court does not believe that towing on the basis of unpaid parking tickets presents the situation where a "postdeprivation remedies are the only ones that a state could be expected to provide because of the impossibility or impracticability of providing remedies prior to the deprivation." *Harris v. City of Akron*, 20 F.3d

C.

Although due process does not require an immediate pre-deprivation hearing, Metro

Government must provide adequate post-deprivation procedures to those whose vehicles are

impounded.  *See City of Los Angeles v. David*, 538 U.S. 715 (2003); *Ross v. Duggan*, 402 F.3d

575, 584 (6th Cir. 2004); *Duffy v. City of Stanton*, 423 F. Supp. 2d 683 (E.D. Ky.

2006)(observing that the Sixth Circuit has upheld the absence of pre-towing process where

prompt post-towing notice and hearing is provided.); "[I]n situations where a predeprivation

hearing is unduly burdensome in proportion to the liberty interest at stake ...postdeprivation

remedies might satisfy due process." *Sickles*, 501 F.3d at 731 (quoting *Zinermon*, 494 U.S. at

132).  Such is the case here.

The local ordinance specifies certain post-deprivation procedures.[17]  These include the

_____

1396 (6th Cir. 1994)(citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990).  Rather, the Court is satisfied here that
adequate pre-deprivation notice and opportunity for hearing is provided in the form of each parking ticket, which
provides a violator with two methods (appeal or pay) to avoid having his vehicle impounded.

[17]§ 72.129  APPEAL OF VEHICLE IMPOUNDMENT TO PARKING CITATION ENFORCEMENT
HEARING BOARD.

(A)    The owner of a motor vehicle that has been impounded pursuant to this section, or other person entitled to
possession, may challenge the validity of such impoundment and request in writing a hearing before the Parking
Citation Enforcement Hearing Board.  The hearing shall be conducted within ten business days of the date of the
request, unless the owner or other person entitled to possession waives the limitation or Metro Government shows
good cause for such delay.  Metro Government shall retain possession of the vehicle pending the hearing, unless the
owner or other person claiming right of possession posts a bond in an amount equal to the fines and fees accrued as
of the date of the hearing request, or $75, whichever is less.  If the owner or person claiming possession of the
vehicle is unable to pay the amount of the bond, the hearing shall be held within 72 hours of the date the request for
hearing is received, unless such person requests or agrees to a continuance.

(B)    No less than five days prior to the date set for the hearing, Metro Government shall notify the person
requesting the hearing of the date, time, and place of the hearing.  In the case of a hearing required to be held within
72 hours of the date of the request as provided in § 72.129, the person requesting the hearing shall be informed at the
time of his or her request, or as soon thereafter as a practicable, of the date and time of the hearing.

(C)    Any person who refuses or, except for good cause, fails to appear at the time and place set for the hearing
shall be deemed to have conceded on his or her and the owner's behalf the validity of the impoundment.

(D)    At the hearing, after consideration of the evidence, the Parking Citation Enforcement Hearing Board shall

16

opportunity to post bond.   If the party whose automobile is impounded cannot post the required

bond, a hearing within 72 hours is available.   No Plaintiff alleges that they were denied the

opportunity for these post-deprivation procedures.   These procedures provide for immediate

return of a vehicle upon posting a reasonable bond, and, in the event that the violator had not

received notice, a near immediate hearing to contest the validity of the impoundment on the basis

of outstanding parking citations.   This satisfies the post-deprivation hearing requirements.

    Though Plaintiffs state in their brief that, "they were never adequately advised of their

right to contest the booting or impoundment" through post-deprivation process, the Court notes

that Plaintiff Mandujano's affidavit reveals that at least *some* form of notice is left on

immobilized vehicles. ("According to the notice which was put on the Explorer, I have to pay in

---

determine whether the impoundment was valid and reasonable. Where it has not been established that the impoundment was justified, an order releasing the vehicle shall be entered.  All fines and fees paid or amounts posted, with the exception of final outstanding citations paid, as bond because of the impoundment of the vehicle shall be returned.  Where it has been established that the impoundment was justified, the Board shall uphold the impoundment and condition the release of the vehicle upon payment of all fines and fees accruing thereto.  If bond has been posted as security for release of the vehicle, said bond shall be forfeited to Metro Government.  Any fines or fees in excess of the amount of the bond posted shall be ordered to be paid by the owner of the vehicle to Metro Government.  The Parking Citation Enforcement Hearing Board shall furnish the owner or person appearing on the owner's behalf with a copy of its order.

   (E)    The Parking Citation Enforcement Hearing Board may consider a parking citation and any other written report made under oath by the issuing officer in lieu of the officer's personal appearance at the hearing.

§ 72.130  IMPOUNDMENT; APPEAL FROM HEARING BOARD TO DISTRICT COURT.

   (A)    An appeal from the Parking Citation Enforcement Hearing Board's determination may be made to the Civil Division of Jefferson District Court within seven days of the Board's determination.  The appeal shall be initiated by the filing of a complaint and a copy of the Board's order in the same manner as any civil action.  The action shall be tried de novo and the burden shall be on Metro Government to establish that impoundment was justified.  If the Court finds that the impoundment was justified, the owner shall be ordered to pay all fees and fines accruing as of the date of judgment.  If the Court finds that the impoundment was not justified, Metro Government shall be ordered to release the vehicle, if applicable, and to return all fines and fees paid as a result of the impoundment and the plaintiff shall be authorized to recover his or her costs.

   (B)    The judgment of the Jefferson District Court may be appealed to the Jefferson Circuit Court, in accordance with the Rules of Civil Procedure.

excess of $500 to get it back . . .").[18] Indeed, this does not appear to be a situation like that faced by the *Gross* court where "neither the Ordinance in question nor any other statue, rule or regulation . . . provided for either a pre-deprivation hearing or a post-deprivation hearing concerning placement of the wheel boot on a citizen's vehicle." *Gross*, 265 F.Supp. 2d at 1003. By contrast, here, the parking ticket itself provides notice that unpaid citations could subject a vehicle to impoundment.  The opportunity to be heard on each underlying parking violation is supplemented by the post-deprivation opportunity for an impoundment hearing described in §72.129.

For all these reasons, the Court is satisfied that on the rare occasion when a vehicle owner does not receive the tickets that precede vehicle immobilization, the post-deprivation procedures meet due process requirements.

### III.

Next, Plaintiffs say that a property deprivation arose when they paid money in the form of parking fines.  An individual "clearly has a property interest in her money." *Herrada v. City of Detroit,* 275 F.3d 553, 556 (6th Cir. 2001)(citing *Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997).  The issue here, however, is not whether money is a property interest entitled to constitutional protection.  Clearly, it is. *Id.*  Rather, it is whether Plaintiffs' payment in response to the immobilizing vehicle policy means that Defendant has taken the property interest Plaintiffs posses in their money.

Plaintiffs do not allege that Defendants freeze violators' bank accounts or garnish their

---

[18] The Court has not reviewed the contents of the notice left on vehicles that have been immobilized, and Plaintiffs do not elaborate how, aside from Defendants' failure to follow state law in providing notice for each ticket leading up to the immobilization, Defendants have "failed to adequately advise . . . Plaintiffs of their right to contest the booting or impoundment."

wages.  Rather, Plaintiffs' claim is intertwined with their attack on the adequacy of notice.  The Court understands the argument to be as follows: (1) leaving a ticket on a windshield is not "reasonably calculated" to provide actual notice to registered vehicle owners of the parking violation or their appeal rights; (2) therefore, windshield notice fails to comport with the requirements of the due process clause; and (3) consequently, Defendants violated Plaintiffs' rights when they collect fines because Plaintiffs paid without ever having received constitutionally adequate notice of their right to appeal.  *Cf. Herrada*, 275 F.3d at 557. ("If [parking] notices failed to comport with the requirements of procedural due process, the City arguably violated [Plaintiff's] rights, because she paid her fine only after receiving the notices.")

For the reasons already discussed, windshield notice is a reasonable and adequate procedure.  Consequently, the payments Plaintiffs made to satisfy outstanding parking fines do not constitute a deprivation within the meaning of the Due Process clause.  A voluntary payment is precisely that.  Moreover, paying outstanding parking fines is not the only option for a person who never received notice and who either has a defense to the underlying violation or who wants to avoid having his vehicle immobilized.  *See Herrada*, 275 F.3d at 559.  As this Court has discussed, one who never received the initial ticket, and therefore did not receive notice of his right to appeal, can always raise the lack of prior notice to challenge the determination of a parking violation.

Plaintiffs' arguments fail the dual tests of logic and the law.  Paying a parking fine under these circumstances does not amount to the deprivation of a property interest without due

19

process.[19]

IV.

Finally, Plaintiffs claim a property interest in "appurtenant service of process and appeal rights." (Pl.'s Mem. in Op. to Defs.' Supplemental Am. Mot. to Dismiss 20)("thus, not only were the Plaintiffs . . . deprived of their monies and their motor vehicles, they were also denied their right to receive notice of their right to appeal, and were thus deprived of the right to appeal itself.").

The fundamental aspect of Fourteenth Amendment due process is notice. It neither guarantees nor requires compliance with specific statutory procedures. *See, e.g. Experimental Holdings, Inc. v. Farris,* 503 F.3d 514, 519 (6th Cir. 2007)(holding a plaintiff cannot state a due process claim for defendant's failure to follow statutory procedural requirements because a plaintiff "cannot have a protect property interest in the *procedure* itself.")(quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 793 (6th Cir. 2005); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."). Thus, even if the Court assumes a violation of Kentucky's statutory requirements, this would not necessarily constitute a deprivation of a constitutionally cognizable property interest or of the right to appeal. *See id.*

Plaintiffs contend that statutory procedures for providing notice are a from of property, the deprivation of which violates due process. They cite a recent decision from the Eastern

---

[19]The dismissal of Plaintiffs' due process claims also dictates dismissal of their Fifth Amendment claim. The Fifth Amendment provides" " . . . nor shall private property be taken for public use without just compensation." U.S. CONST. amend. V. Because Defendants were within their rights to authorize and levy parking fines, the collection of a fine is therefore not a "taking."

District of Michigan, *Kircher v. City of Ypsilanti*, 2007 WL 1343705 (E.D. Mi. 2007), which

considered whether a landlord whose secured vacant building was boarded up by City officials

had a protected property interest in the building that triggered the right to notice and an

opportunity to be heard before it was boarded up.  *Id.* at *5.  Because the local ordinance

specifying the procedure to secure a vacant building required that the City attempt to notify the

owner, the court concluded that the vacant unsecured building was protected property under the

meaning of the Fourteenth Amendment. *Id.* ("the fact that [the landlord] was entitled to notice

that the house was unsecured and an opportunity to secure the structure created a cognizable

property interest under the Fourteenth Amendment.").  Plaintiffs are correct when they say that

"a right to notice, if statutory prescribed, may create a property interest."  The Court believes

that Plaintiffs are mistaken, however, to interpret *Kircher* as meaning that "a right to notice if

statutorily prescribed" creates a property right in the form notice itself.  The *Kircher* court

merely used the statutory notice procedures as evidence of the existence of a protected property

interest in an unsecured, vacant building, not that the landlord had a property interest in a

particular form of notice.

Plaintiffs also cite *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 n.5 (1982) for the

proposition that "having made access to the courts an entitlement or a necessity, the State may

not deprive someone of that access unless the balance of state and private interests favors the

government scheme."  The Court certainly agrees that due process requires the right to appeal or

challenge the validity of a parking citation.  The Court has concluded that windshield notice

provides this.

A state legislature is entitled to specify different or better forms of notice, but it may not

21

redefine due process under the Fourteenth Amendment.  *See, e.g.  Experimental Holdings, Inc.,* 503 F.3d at 519 ("The fact that the state gives . . .*procedural* rights in determining the substantive right . . . does not turn those procedural rights into federal due process rights.").  In our circumstances, no rule or law cited to this Court equates a violation of statutory notice procedures with a violation of constitutional due process.  *See id.*  Such violations would merely present a separate claim for relief under state law.

V.

Plaintiffs also contend that Defendants' practice of immobilizing vehicles with boot devices is an unreasonable search and/or seizure under the Fourth Amendment.  The procedure is per se unreasonable, they argue, because (1) Defendants did not obtain a warrant prior to immobilization and (2) the immobilization and impoundment was otherwise unauthorized.

One of the Fourth Amendment's purposes is to protect an individual's property rights in an item seized.  *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 62-63 (1992)(holding that the Fourth Amendment "protects property as well as privacy").  In *Soldal*, the Supreme Court defined "seizure" for purposes of the Fourth Amendment as a "meaningful interference with an individual's possessory interest in that property." *Id.* at 51(internal citations omitted).  Booting a vehicle effectively interferes with a possessory interest.  The question is whether Defendants had the legal authority sufficient to justify it.  This is not the same inquiry as whether Defendants provided Plaintiff with due process.  *See Duffy*, 423 F.Supp. 2d at 690 ("The Court's determination that the City provided Plaintiff with due process of law when it removed his vehicles contributes to, but does not preclude, the separate inquiry into the reasonableness of the seizure under the Fourth Amendment.").

22

Plaintiffs argue that state law does not authorize Defendants to immobilize and/or impound vehicles on the basis of their three or more unpaid parking citations. This does not appear to be the case. Ky. Rev. Stat. Ann. § 82.605 provides broad authority and discretion to local governments to impose penalties for the violation of parking ordinances. *Id.* ("Any local government may enact parking ordinances and impose penalties for the violation of such ordinance . . . pursuant to the procedures set forth in KRS 82.600 to 82.640."). These Kentucky statutes provide sufficient authority for Defendants' enforcement policy. LMO § 72.999(A)(3) states that "any violations by the same vehicle more than three times during a calendar year, shall cause the violating vehicle to be towed and the owner thereof shall be responsible for the towing charges pursuant to § 72.062(A)." Thus, Defendants' decision to use immobilization as a penalty falls within the broad range of the state and local authorizations.

Plaintiffs argument that § 82.625(1) authorizes impoundment only in limited situations, such as when a vehicle is parked in a prohibited area like a fire lane or in the case of a snow emergency, and not for the purpose of inducing vehicle owners to pay outstanding parking citations is unpersuasive. [20] The last clause of the statute authorizes impoundment "for any other lawful reason." *Id.* Moreover, Ky. Rev. Stat. Ann. § 82.620(2)(b) explicitly states that the parking citation to be affixed to offending vehicles should contain "a statement that a parking violation may result in impoundment of the vehicle."

Here, Defendants' interest in enforcing its parking ordinances and collecting fines would seem to outweigh the temporary deprivation involved in immobilization or impoundment.

---

[20]*See* Ky. Rev. Stat. Ann. § 82.625 (providing that "Any local government may impound a motor vehicle parked, stopped or standing upon a street or public way within its jurisdiction in violation of an ordinance or statute prohibiting parking, stopping or standing in the location, manner or at the time the vehicle is cited *or for any other lawful reason.*")(emphasis added).

23

Moreover, as noted above, Defendants gave Plaintiffs notice of their parking violations on at least three occasions before their vehicles were immobilized, and, as noted above, the parking ticket itself clearly states, "Failure to pay may result in impoundment and/or immobilization of this vehicle, resulting in additional fees, including towing, handling, and storage." Plaintiffs' decision not to contest a citation "does not give rise to a claim under the Fourth Amendment for unreasonable seizure." *See Duffy*, 423 F.Supp. 2d at 690.

## VI.

Plaintiffs have also set out state-law claims under Sections 1, 2, and 10 of the Kentucky Constitution as well as Ky. Rev. Stat. Ann. § 446.070. From the available evidence, it seems that Metro Government's ticketing and impoundment procedures may not strictly follow some state and local enacted provisions. The seriousness of these transgressions and the available remedies are distinctly matters of state law and procedure. Nothing this Court has said would seem to impair pursuit of those state remedies.

Section 1367(c) of Title 28 of the United States Code provides, in pertinent part, as follows: "The district courts may decline to exercise supplemental jurisdiction over a claim.. if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed all federal claims over which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *Id.* Having already consolidated Plaintiffs' original suit with the declaratory action that Defendants originally filed in Jefferson Circuit Court which was removed to federal court, the Court will now remand Plaintiffs' state-law claims as well as Defendants' declaratory action to state court.[21]

---

[21]Because the Court will remand this action, Plaintiffs' motions to certify a class and to amend their complaint are denied without prejudice as moot.

24

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record